MARIANO ARROYO MERINO ET AL., Petitioners, *v.* PUERTO RICO SUGAR BOARD, Defendant; C. BREWER P.R., INC., Intervener; SUGAR GROWERS' ASSOCIATION, Amicus Curiae.

No. JA-62-1.     Decided December 18, 1963.

612

*Juan Nevárez Santiago* for petitioners. *Lydia F. Marcos* for defendant. *McConnell, Valdés & Kelley,* and *Pablo R. Cancio* for intervener. *Fiddler, González & Rodríguez,* and *Rafael R. Vizcarrondo* for amicus curiae.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The question for decision in this case is whether or not Mariano Arroyo Merino *et al.,* petitioners herein, who deliver their cane to intervener C. Brewer P.R., Inc., at certain points designated by the latter, use their own hoists for such purpose and pay the cost of reloading the cane from their vehicles to the intervener's railway, are entitled to reimbursement by the latter of the cost of the hoisting and personnel service, notwithstanding the points so designated lie within their respective farms or at less than 1/2 kilometer from their normal or natural exit, considering that other growers who also deliver their cane to the intervener at the points so designated are paid compensation because the points designated do not lie within their farms, but, on the contrary, are situated 1/2 kilometer or more from their normal or natural exit.

Petitioners Mariano Arroyo Merino *et al.,* sugarcane growers and producers, deliver their cane for grinding to intervener C. Brewer P.R., Inc. (and, therefore, they are colonos of the latter), at the points designated by that enterprise to which petitioners take the product in their own equipment directly from the points or "banks" where the cane is cut in their farms. Petitioners did not reload their cane with a hoist before transporting it to the designated points lying within petitioners' farm or at less than 1/2 kilometer from the normal or natural exit of each farm. The designated point belongs to each petitioner, with the exception of three cases in which the points belong to intervener. Furthermore, the latter owns the railway tracks which by

means of the corresponding servitudes of right of way extend to the designated points where petitioners have installed their own hoists used for reloading their cane to the railway. Since 1952 petitioners have operated those hoists on their own account and expense without receiving any reimbursement therefor. Intervener has paid them 7-1/2 cents per ton of cane for hauling expenses in the cases in which the cane has been received in the same farm, and 15 cents when it has received the cane at less than 1/2 kilometer from the farm. To other colonos who have delivered their cane at some of the points so designated the intervener has reimbursed the hoisting and personnel expenses to them, and the latter have in turn paid to the owner of the hoists for such service. According to the evidence presented, no private colono has delivered cane to the intervener at the hoists of petitioners Nicolás García, Jesús M. Rodríguez, Valentín Villafañe, Abad Rivera, Antonio Fuentes, Sucesión McConnie, Otto Irizarry Sambolín, Salvador Morales, Alberto Fuentes and Pedro M. Calderón. Compensation was paid to petitioners Abad Rivera and Miguel A. Cruz for loading at the hoist of the intervener at the point of delivery of the cane designated by the latter.

The Sugar Board dismissed the complaint praying that the intervener be ordered to pay to petitioners the amount of 29 cents per ton of cane delivered by the latter to the intervener in the manner aforesaid. This amount represents the cost of the hoisting and personnel services which petitioners had to provide for themselves at the points designated by the latter to receive the cane of petitioners and other colonos. The petition requesting that thereafter the intervener provide them gratuitously such services was also denied. After moving for reconsideration, which was denied, petitioners filed the present petition for review assigning the commission by the Board of the following seven errors:

"1. The order challenged is contrary to § 6 of Act No. 426 of May 13, 1951, as amended, which provides for free hoisting service to all colonos of the central.

"2. The said order is void because appellee erred in applying the law to the facts of the complaint.

"3. If the order of the Board should prevail, it would constitute discrimination since it denies the equal protection of the law to appellants and also renders the Sugar Act nonuniform in its application.

"4. The order challenged is arbitrary and unreasonable and the Board exercises powers which have been denied to it by the statute.

"5. The order of the Board constitutes a forced interpretation in favor of the central, contrary to the spirit of liberality with which that statute should be construed in favor of the colonos.

"6. The Board has attributed to the case of *Colonos de Santa Juana* v. *Sugar Board, supra,* a scope which it does not have and an interpretation contrary to the holding in that case.

"7. The order challenged deprives appellants of their property rights without due process of law, and is contrary in this respect to the Constitution of the Commonwealth of Puerto Rico and the Constitution of the United States of America which govern this matter in Puerto Rico."

Since these errors are closely related, we will discuss them together. In the study of the question involved in this case we must consider the provisions of § 6(a) of Act No. 426 of May 13, 1951 (5 L.P.R.A. § 375(a)),[1] the scope of our rulings in *Colonos de Santa Juana* v. *Sugar Board,* 77 P.R.R. 371 (1954); and *Eastern Sugar Associates* v. *Sugar Board,* 77 P.R.R. 339 (1954), *aff'd,* 235 F.2d 347 (1st Cir. 1955), and the propriety and validity of § 1 of

---

[1] Section 6(a) of Act No. 426 *supra,* which is the Sugar Act of Puerto Rico, provides the following:

"The following terms and conditions shall govern the transportation and hauling of the *colono's* cane:

"(a) The central may provide means for the transportation of its *colono's* cane from the *colono's* farms to the central, and when such means is so provided, the central shall pay to the *colono* seven and one-half

Rule No. 7² of the Sugar Board of P.R., effective as of June 13, 1957 (5 R.&R.P.R. § 391–91).

Petitioners maintain that in reloading their cane to the hoist at the intermediate point designated by intervener, they are entitled to reimbursement for the cost of reloading at that point, according to *Eastern Sugar Associates, supra,* in which we held that, notwithstanding the designation of the mill as the point for delivery of the cane of colonos to the central, if the latter actually receives it at some other point which is in fact an intermediate point, the central should provide at that place free hoisting and personnel service. Petitioners contend that the situation in this case is

(7½) cents on each ton of cane delivered, as compensation for hauling expenses; *Provided,* That if during the grinding season of 1950 any central has paid a higher amount for such expenses, the latter shall be the governing rate for said central. In case the central does not provide such means of transportation, it shall be bound to compensate the *colono* in the manner and to the extent hereinafter established, for the transportation of said cane from the *colono's* farm to the point of delivery designated by the central, whether such transportation is made with equipment belonging to the *colono* or leased by him. *The central shall be bound to provide gratuitously to all its colonos hoisting service and the necessary personnel for the operation thereof at each point designated by the central for the delivery of cane.* In the case of a new *colono,* or one who desires to change the point of delivery of the cane, and the central and the *colono* do not reach an understanding as to the point of delivery, the Board shall determine the point where the central shall receive the cane of the *colono* from among the ones designated by the central." (Italics ours.)

² Section 1 of Rule No. 7 provides the following:

"The sugar mill shall be compelled to furnish to all its *colonos,* without cost to them, hoisting services and the necessary personnel for its operation when the distance from the natural or normal exit of the farm to the point of delivery designated by the sugar mill is one-half kilometer or more."

According to the preamble of Rule No. 7 *supra,* a hearing was held before the Sugar Board to discuss the regulation of the hoisting services to be furnished by the sugar mills to their colonos, or in lieu thereof negotiate the agreement for reimbursements by the former to the latter for the hoisting and personnel services, and at those hearings the colonos and representatives stated that they were in accord with the approval of the proposed Rule No. 7.

different and is not covered by the holding in *Colonos de Santa Juana, supra,* since in that case the central was not required to designate delivery points with the right to free hoisting and personnel in the farms of appellants, nor was it sought to determine whether or not the farms of appellants or points adjacent thereto within a radius of 1/2 kilometer from its exit are delivery points. In this case the delivery point has been designated by the central for all the colonos of a particular sector. The problem is that this point designated by the central lies within the farms of appellants or at less than 1/2 kilometer from their normal or natural exit.

The Board ruled, on the contrary, that in this case, and as respects petitioners, the central is collecting the cane within their farms or points adjacent thereto and, therefore, according to *Colonos de Santa Juana,* it is not bound to provide free hoisting service.

█ In deciding the different questions raised in this case, it is necessary to point out certain rules of construction which we have adopted in connection with controversies of this nature. In *A. Roig, Sucrs. v. Sugar Board,* 77 P.R.R. 324 (1954), we said that: "Section 6(c) must be read in the context of Act No. 426 [the Sugar Act] as a whole and bearing in mind the above-noted circumstances of the sugar business in Puerto Rico." We see no reason why this rule should not be equally applied to any other aspect of § 6. In that case we also said that "A Section of statute is read not in isolated fashion but together with the other Sections of the Act in order to ascertain its true meaning and purpose." In *South P.R. Sugar Co. v. Sugar Board; Mercado, Int.,* 82 P.R.R. 814 (1961), we pointed out at p. 831 that "It is a well-established rule of this Court to give 'great consideration and respect' to the conclusions and interpretations of the specialized administrative agencies," and in *South P.R. Sugar Co. v. Sugar Board,* 83 P.R.R. 389 (1961),

and in *Colonos de Santa Juana, supra,* we applied this rule specifically to the findings of the Sugar Board. In *Central Monserrate, Inc.* v. *Sugar Board,* 83 P.R.R. 105 (1961), we said at p. 111 that the absence of definitions of certain terms in the Sugar Act and of the powers conferred upon the Board "obey, no doubt, to the legislative intent of delegating upon that body the reasonable regulation of the matter, and of leaving, therefore, to the administrative discretion the determinations which require the daily attention to diverse economic factors and of industrial organization."

■ 1–2. For a better understanding of the process of hauling and transportation of cane of colonos of a central and the compensation which the latter must pay them for both operations, the Board states in its memorandum that the terms in question involve the following five operations:

"1. Loading of the vehicles in the cutting 'banks.'

"2. Hauling of the cane in those vehicles up to a concentration point.

"3. Hoisting or reloading from those vehicles to the vehicles which will transport it to the mill.

"4. Transportation or hauling to the mill or to an intermediate point between the concentration point and the mill.

"5. Reloading at the intermediate point or unloading at the mill."

The Board explains that:

"The colono makes the first three operations at his expense; the central compensates him for the 'hauling.'

"The central provides the fourth transportation operation and when it does not, it pays to the colono by way of compensation 5 cents per ton-kilometer traveled. When the colono does the transportation, the central pays him compensation for the 'transportation.' Such compensation is calculated at ½ kilometer from the exit of the farm to the central. Under those circumstances, 'hauling' is also the distance traveled within the farm and up to ½ kilometer therefrom. In that case the central pays to the colono by way of compensation 15 cents per ton of

cane delivered instead of only 7½ cents, since the 'hauling' then consists of more operations and is more costly to the colono.

"In order to cover the fifth operation, the central provides free hoisting service at both places, that is, at the intermediate point to the mill and at the mill itself. If the central itself does not provide the hoisting service at the intermediate points, in that case it compensates the colono for doing it at his own expense.

"Section 6 (b) explains the meaning of the term 'transportation' as this term is used in the sugar industry for the purposes of compensation. 'Transportation' for those purposes means carrying from the farm to the point of delivery, provided the distance to be covered from the farm to the point of delivery is ½ kilometer or more. We repeat, no compensation is paid for transportation for distance covered within the farm or to a place less than ½ kilometer from the farm, because that distance is considered as an operation within the act of hauling the cane and is compensated as such, as already explained.

"It is a practice, which has confused appellants, to include the 15-cents compensation for hauling in the transportation rate and to consider the total as compensation for transportation.

"The lifting or reloading of the cane necessary to initiate its transportation to the mill is well known as 'first lift' among those engaged in the sugar industry.

"The reloading consists in emptying the loaded vehicles hauled to the concentration point by lifting the cane to another vehicle which will carry it to the mill. The cane tied in bundles with the help of sling chains is lifted in bundles by a hoist whose moving arm deposits the bundle in another vehicle. The first vehicles return empty to the cane field to be reloaded and the second vehicles transport the cane to the mill where it is weighed and emptied by another hoist. When instead of carrying it directly to the mill the colono transports or carries his cane only as far as an intermediate point, a 'second lift' is necessary at that point. It is this 'second lift,' between the 'first lift' and the unloading of the cane at the central, which gives the right to hoisting service regardless of the amount which the colono may receive for hauling expenses since the second reloading is not included in the usual hauling operations. It is

this second reloading which the Act considers as if the cane were delivered at the mill itself where the colono does not have to incur hoisting expenses."

Historically, the central has compensated the colono for the hauling of cane. The cane was transported from the hauling point to the mill or to an intermediate point. The centrals have always operated their own hoists at the mills and, therefore, when the colono transported his cane to the mill he received free hoisting service there. When he transported it to an intermediate point, it was necessary to install and operate a second hoist, and, therefore, it was necessary to determine who was going to install and operate the extra hoist. It seems to us that the Legislative Assembly, in its desire to equate the delivery services of all the colonos, and considering that when their cane was delivered directly to the central they were not required to pay for the hoisting services, it decided that the centrals should pay for such hoisting service at the intermediate point and it so provided in the last part of § 6(a) *supra*. In *Colonos de Santa Juana, supra,* it was alleged that the sidings or loading stations situated on farms of the colonos or adjacent places where the cane passed from the colonos to the central, were "points of delivery" of the central for the delivery of cane, and therefore the colonos were entitled to free hoisting and personnel service by the mill. We sustained an order of the Sugar Board of Puerto Rico holding that when the owner and operator of a central takes physical possession of colonos' cane *on the latter's farms or adjacent* thereto, the central is not required under § 6 of the Sugar Act of Puerto Rico, *supra*, to furnish free hoisting service. In that case we said that:

"If a colono takes his cane to an intermediate point, it is necessary not only to load it at the farm but also to reload it at the intermediate point for transportation by the central to the mill. And it is the hoisting service in connection with the reloading operation at the intermediate point which § 6 requires

the centrals to furnish free of charge to the colonos. But, as the Board held, in so providing the Legislative Assembly did not intend for its language to cover the loading at the colono's farm or immediately adjacent thereto. It was only for the reloading operation at the intermediate point—and unloading at the mill, which was included out of an abundance of caution as the mills would undoubtedly continue this service without charge to the colonos—that the Legislative Assembly wanted to assure the colonos of free hoisting service. In the light of the foregoing, we conclude that free hoisting service is required only where the 'point of delivery' is a place to which the colono himself transports his cane all or part of the way to the central. Accordingly, the Board did not err in refusing to require the central in this case to furnish free hoisting service to those colonos whose cane is received by the mill within the colonos' farms or immediately adjacent thereto."

And we added that although it is true that "§ 6(a) provides that free hoisting service shall be supplied to *all* colonos '. . . at each point designated by the central for the delivery of cane' . . . '*all*' in this context means all colonos who deliver their cane at intermediate points."

In *Colonos de Santa Juana, supra,* we said further that:

"Here the Board rejected the petitioners' contention that under § 6 the mills must furnish free hoisting service on the colonos' farms and immediately adjacent thereto as '. . . completely unreasonable since it would impose on the respondents excessively burdensome obligations.' While we must on final analysis exercise our independent judgment on questions of law arising under Act No. 426, the views of the Sugar Board '. . . as a specialized agency dealing daily and exclusively with these problems . . . are entitled to great weight and respect.' "

■ In designating certain places for delivery of cane within petitioners' farms or at less than 1/2 kilometer from the normal or natural exit of those farms, the intervener was in fact determining that it was going to transport petitioners' cane pursuant to the first part of § 6(a) of the Sugar Act. It is only when the colono, and not the central,

transports his cane, that is, when the colono takes his equipment loaded with cane at the cutting "banks" to a concentration point on his own farm or adjacent thereto, reloads the cane there into the vehicles which will transport it to the mill (first lift by hoist) and transports or hauls it to the mill or to the point designated by the central where it will receive the cane, that there arises the obligation of the central (1) to pay 15 cents per ton for hauling expenses and 5 cents per ton per kilometer from the farm to the delivery point, provided the distance is one-half kilometer or more, and (2) to furnish free hoisting and personnel service at the point so designated, or to reimburse for this service if the colono furnishes the service.

██ The fact that the central has designated a point on petitioners' farms or at less than 1/2 kilometer from their normal or natural exit as the point for delivery of the cane of petitioners and other colonos does not necessarily mean that, as to the owners of such farms, the point in question is the intermediate point designated by the central as the point for delivery of the cane (and, therefore, that it imposes upon the latter the obligation to furnish free hoisting and personnel service at that place or to pay compensation), as it may actually be for other colonos. Already in *Eastern Sugar Associates, supra,* we held that the point so designated for the delivery of the cane is not the point which the central may notify as such to its colonos, but the place lying at some intermediate point between the central and the colono's farm to which the colono transports his cane and where the central actually receives and takes possession of the cane. Therefore, the notice which the intervener gave to petitioners in the case under consideration that certain sites in their farms or adjacent thereto were designated as intermediate points of delivery of cane was not nor could be by itself the final determination on the matter. In other words, the central cannot solely by its notice affect the rights of

colonos as to the point to be designated for the delivery of cane. The question of whether such designation by notice is an actual and effective designation must be determined considering all the circumstances of the operation of delivery of the cane by the colono to the central. It is therefore evident that a site may be an intermediate point designated for delivery of the cane of some colonos and not so as to other colonos in connection with whom the circumstances of the operation are different.

■ A careful examination of the record of *Colonos de Santa Juana, supra,* shows that that case did not raise the same question which is now under consideration under operational circumstances identical with those of this case, except that here, as in *Eastern Sugar Associates,* the central sent to its colonos, including petitioners, a formal notice designating a site on their farms or adjacent thereto as the intermediate point for delivery of the cane of petitioners and other colonos. As already stated, such notice is not final and conclusive by itself. We therefore conclude that Regulation No. 7 of the Sugar Board does not violate § 6 of the Sugar Act, but, on the contrary, it is a justified clarification and to that effect a proper definition, within the powers of that Board, of the term "adjacent thereto" which we employed in *Colonos de Santa Juana* in holding in that case that § 6 (a) *supra* "does not require the centrals to furnish free hoisting services to colonos whose cane they receive within the colonos' farms or immediately *adjacent thereto.*" (Italics ours.)

■ 3. The order of the Board challenged in this case does not constitute discrimination, nor denies the equal protection of the laws, nor renders the Sugar Act nonuniform. We already said that the purpose of the different provisions of § 6 of the Sugar Act is to equate the conditions of delivery of the colonos. It is therefore evident that *all* the colonos who transport and deliver their cane at the mill of a central

or at some intermediate point designated to the effect by the latter, are entitled to free hoisting and personnel service at such points, or to reimbursement of the expenses incurred in providing such services; and that *all* who deliver their cane to the central on their farms or places adjacent thereto are entitled to receive compensation for hauling, namely 7-1/2 cents per ton when the cane is received within the farm and 15 cents per ton when it is received at less than 1/2 kilometer from the farm. This compensation of 7-1/2 cents in some cases and 15 cents in others includes, as part of the expenses incurred in the hauling, the hoisting expenses for the reloading, that is, the "first lift" to initiate the transportation of the cane to the intervener's mill.

4. The order in question of the Sugar Board is not arbitrary nor unreasonable, nor did the Board assume powers denied to it by the Sugar Act. Already in *Central Monserrate, supra,* we said that the Board has powers to define terms not defined in the Sugar Act and to provide reasonable regulation, and the legislative intent was to leave to the administrative discretion the determinations which require the daily attention to diverse economic factors and of industrial organization. In the case under consideration the Board clarified and determined by definition the terms "all the colonos" and "adjacent thereto" taking into account "the purpose of the Act and the economic circumstances and of industrial organization to be governed by it." The interpretation placed by the Board on those terms succeeded precisely in preventing the unreasonable and burdensome interpretation to which we made reference in *Colonos de Santa Juana, supra,* that is, to impose upon centrals the obligation to furnish free hoisting and personnel service on the farms of each of the thousands of colonos existing in Puerto Rico. Having established the existence of this situation in the case *supra,* we must presume in this case, in the absence of evidence to the contrary, that such situation continues to exist

(§ 102(31) of the Law of Evidence—32 L.P.R.A. § 1887 (31)).

5. Nor can it be concluded that the order of the Board challenged by petitioners in this case is a forced interpretation in favor of the centrals and contrary to the spirit of liberality with which the Sugar Act should be construed, and more specifically, § 6 thereof, in favor of the colonos. Although it is true that that Act vests the Board with broad powers to investigate and decide "in a desire to protect the colonos who . . . constitute a weak economic group," it is no less true that the Sugar Act provides an orderly distribution of the costs and of the benefits among colonos and centrals. It could not have been the legislative intent that this Act should benefit the colonos to the point of affecting adversely the entire economy of the industry by imposing on centrals unreasonably burdensome obligations. *Colonos de Santa Juana, supra; South P.R. Sugar Co. v. Sugar Board,* 82 P.R.R. 814 (1961). The order in question is but a clarification by definition of our decision in *Colonos de Santa Juana, supra,* so that the challenge by petitioners is rather aimed at our holding in that case, that is, that it is contrary to the true legislative intent. However, the fact is that the Legislative Assembly has had ample opportunities during the eight years which have elapsed since that decision to correct the situation and has not done so, despite the fact that it has enacted several amendments to the Sugar Act but not with reference to any provision of § 6 thereof. We must therefore conclude that the failure of the Legislative Assembly to act with respect to our construction of § 6(a) in *Colonos de Santa Juana, supra,* amounts to legislative approval and ratification of such construction and that the latter should be adhered to until the Act is amended by subsequent legislative action. *Missouri v. Ross,* 299 U.S. 72 (1936); *United States v. Elgin T. & E. Ry.,*

298 U.S. 492 (1936); *Ponch* v. *Prudential Ins. Co.*, 97 N.E. 731 (N.Y. 1912); 50 Am. Jur. 318.

■ 6. Petitioners contend that the order challenged deprives appellants of their property without the due process of law. In upholding the constitutionality of § 6(a) in *Eastern Sugar Associates, supra*, we held that: "But as we pointed out in *A. Roig, Sucrs.* v. *Sugar Board*, and *Eastern Sugar Associates* v. *Sugar Board*, No. 3, decided today, §§ 5, 6 and 7 [of the Sugar Act] must be read together as providing the overall compensation to colonos. *Only if the testimony showed that these Sections, read together, resulted in a confiscatory participation for the central would any of them be violative of due process. And no such testimony was offered here or in any of these cases.*" (Italics ours.)

In support of this assignment petitioners merely alleged that it was "obvious" that the interpretation of the Board in *Colonos de Santa Juana, supra*, deprives petitioners of their property without the due process of law.

Petitioners have not presented any evidence in support of their contention to show that what they have received as participation of their cane on an overall basis, and without considering just what they receive under § 6, is a confiscatory participation. In the absence of such evidence adduced before the Board, we cannot consider the question. *Piovanetti* v. *Vivaldi*, 80 P.R.R. 108 (1957), footnote 8, p. 122.

7. At the hearing before this Court it was alleged that we lack jurisdiction to entertain this petition for review because petitioners did not verify their request to the Board to reconsider its decision in this case; that the oath of such reconsideration is an indispensable requisite to perfect the petition for review in cases such as this.

This Court has power to review, "*according to the terms and conditions established by law*," the decisions of the Sugar Board (4 L.P.R.A. § 35). The Sugar Act of Puerto Rico

provides that request may be made to this Court to review a decision or order of that Board (5 L.P.R.A. § 402). The same section provides that the party prejudiced may request reconsideration of such decision or order within certain periods, and that "The request for reconsideration shall be submitted under oath and shall state the fundamental facts and grounds on which it is based." In this case the request for reconsideration was made within three days after the date of the order challenged, but it was not submitted under oath.

Time and again we have held that in order that this Court may acquire jurisdiction to entertain the appeals taken before it, it is necessary to comply strictly with the provisions of the law regulating the appeals. *Vázquez* v. *Rivera,* 69 P.R.R. 883 (1949). In *Rodríguez* v. *Industrial Commission,* 61 P.R.R. 215 (1942), and in *Amenguar* v. *Industrial Commission,* 49 P.R.R. 10 (1935), we held that this Court is without jurisdiction to take cognizance of a petition for review of a decision or order of the Industrial Commission if reconsideration of such order or decision has not already been requested and denied (11 L.P.R.A. § 12). This question of lack of jurisdiction may be raised for the first time on appeal either by the parties or by the Court *motu proprio. Piovanetti* v. *Vivaldi,* 80 P.R.R. 108 (1957), footnote 8; *Ponce* v. *F. Badrena e Hijos, Inc.,* 74 P.R.R. 210 (1952), footnote 6.

We agree that the filing of a motion for reconsideration is an indispensable prerequisite to perfect the petition for review provided by the Sugar Act. However, in our opinion, the fact that the motion was not verified is a mere irregularity which, in cases coming from administrative agencies, particularly when the reconsideration is based on facts and circumstances already alleged and considered by the agency, such as in the present case, does not defeat the jurisdiction of this Court to take cognizance of this petition

in the absence of express statutory provision to the effect. *W. H. Lailer & Co.* v. *C. E. Jackson Co.*, 75 F.Supp. 827 (D.C. Mass. 1948).

The order of the Sugar Board of Puerto Rico will be affirmed.